UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY JEROME WOMACK,

   Plaintiff,

  v.

DAVID BAUGHMAN, et al.,

   Defendants.

No. 2:17-cv-2708 TLN KJN P

FINDINGS AND RECOMMENDATIONS

I. <u>Introduction</u>

  Plaintiff is a state prisoner, proceeding without counsel. Plaintiff has sustained three strikes under 28 U.S.C. § 1915(g). (ECF No. 11 at 2.) Plaintiff's motion for reconsideration of the April 18, 2019 order requiring plaintiff to pay the filing fee remains pending, but in the meantime, plaintiff filed two motions for preliminary injunctive relief. As discussed below, the undersigned recommends that the motions be denied.

II. <u>Background</u>

  A. <u>Original Complaint</u>

  At the time plaintiff signed his original complaint on November 7, 2017, he was housed in New Folsom, Represa, and alleged he had been attacked by four inmates on October 30, 2017. Plaintiff named three defendants and alleged each acted as follows:

////

1

1. Psychologist Marquez – While participating in the EOP[1] program, plaintiff informed Marquez that plaintiff had filed numerous appeals complaining that staff at New Folsom ("CSP-SAC"), High Desert State Prison ("HDSP"), and Corcoran State Prison have all attempted to get plaintiff hurt by inmates, but Marquez refused to document or report it. Plaintiff filed an appeal against Marquez for her refusal. Marquez then came to plaintiff's cell with the appeal and told plaintiff that Marquez and Correctional Officer Lee decided to remove plaintiff from the EOP program and return him to the level four mainline. Plaintiff objected that Marquez and Lee were putting plaintiff's life in danger "as she well knew;" Marquez returned the appeal to plaintiff and told him she was removing him from the program. (ECF No. 1 at 4.) Plaintiff filed another appeal in response. Subsequently, plaintiff was sent to the level four mainline, and on October 30, 2017, plaintiff was attacked by four inmates on the yard. Plaintiff and the four inmates were pepper sprayed; plaintiff contends he was set up.

2. Correctional Officer, Sgt. Miss Lee – plaintiff claims Lee "was directly responsible for the attack. (ECF No. 1 at 5.)

3. Warden Baughman – plaintiff claims the warden is responsible for the safety and security of the inmates. (ECF No. 1 at 5.)

In addition to money damages, plaintiff seeks "safe placement from level four correctional officers." (ECF No. 1 at 6.)

B. <u>Plaintiff's Amended Complaint</u>

On February 18, 2018, plaintiff signed an amended complaint which was filed on February 23, 2018, as a matter of course. Fed. R. Civ. P. 15(a). Plaintiff sets forth his experiences at prisons prior to his transfer to CSP-SAC in 2017, and reiterates his original claims against Marquez, and elaborates that Marquez told plaintiff that she understands his safety concerns are connected to his being in the EOP program. (ECF No. 9 at 11.) Plaintiff was

---

[1] CDCR's Mental Health Services Delivery System Program Guide provides four levels of mental health care services: Correctional Clinical Case Management System ("CCCMS"); Enhanced Outpatient ("EOP"); Mental Health Crisis Bed ("MHCB") and inpatient hospital care. <u>Coleman v. Brown</u>, 2013 WL 6491529, at *1 (E.D. Cal. Dec. 10, 2013).

2

rehoused on the mainline on January 3, 2017. (ECF No. 9 at 11-12.) Initially, plaintiff refused to leave his cell.

In 2017, plaintiff was assigned to work in the Building 2 dining hall, which plaintiff argues was to set plaintiff up for an inmate attack because plaintiff was the only inmate from Northern California; the other seven inmates assigned to work there were all "gangbangers from southern California," who "started disrespecting and threatening plaintiff." (ECF No. 9 at 13.) On several occasions, plaintiff informed the dining hall supervisor, Correctional Officer N. West,[2] that plaintiff was being set up to be attacked by gangbangers. On September 28, 2017, West referred plaintiff to mental health stating "[p]laintiff exhibits bizarre behavior, that inmate feels a sense of victimization." (ECF No. 9 at 14.) Plaintiff requested a job change, which was granted, but West withdrew the change application because West said plaintiff was the best worker. Following several occasions where plaintiff refused to report to work because of his safety concerns, and West insisted plaintiff return to work and threatened to write a disciplinary if he did not, plaintiff reported back to work at the dining hall. About 25 days later, plaintiff was attacked on C-yard by four gangbangers, apparently around October 30, 2017.[3]

Plaintiff contends that the inmate attack was the result of retaliation, an alleged pattern of continuous retaliation initially starting at CSP-SAC in the year 2010, and continuing through his housing at High Desert State Prison 2014, and at Corcoran State Prison in 2015. Plaintiff points out that he warned defendants at CSP-SAC that if he was rehoused on the Level 4 mainline he would be attacked. (ECF No. 9 at 15.) He argues that his safety concerns about correctional officers' "continuous actions of setting plaintiff up to be attacked by inmates" still has not been addressed, and he "is still in imminent danger until correctional staff and mental health staff honestly address this retaliation issue." (ECF No. 9 at 15.)

////

---

[2] West is not named as a defendant.

[3] Plaintiff was seen by Sandra Davis, a mental health social worker, on October 5, 2017. (ECF No. 9 at 14.) Under the mailbox rule, plaintiff filed the original complaint on November 7, 2017. (ECF No. 1 at 6.)

3

| | |
|---|---|
| 1 | In addition to Marquez, Lee, and Baughman, plaintiff names as defendants: A. Moore, |
| 2 | CSE (appeals responder); CEO M. Felder; psychologist Dr. Weyer; Chief Psychiatrist K. |
| 3 | Francesch; Chief Psychiatrist J. Heitkamp, M.D.; Deputy Director J. Lewis (Appeals Branch, Elk |
| 4 | Grove); K. Klingenberg (Health Care Appeals); D. Knipp (Health Care Appeals); S. Chaiken, |
| 5 | Ph.D. (Chief Psychologist); Correctional Counselor J. Gibson; Correctional Counselor "John |
| 6 | Doe;" and Social Worker Sandra Davis. (ECF No. 9 at 3-4.) In addition to money damages, |
| 7 | plaintiff seeks expungement of all prison disciplinaries from plaintiff's central file, specifically, |
| 8 | write-ups for refusing to accept a cellmate for safety concerns, and transfer to a prison where |
| 9 | correctional officers have "zero tolerance for officers setting inmates up to be attacked by other |
| 10 | inmates." (ECF No. 9 at 5.) |

### C. Screening

Neither complaint has yet been screened by the court as required under § 1915 due to the finding that plaintiff has sustained three strikes under § 1915(g), and his request for reconsideration as to whether he faced imminent danger at the time this action was filed remains pending.

### D. Plaintiff's Subsequent Transfers

Plaintiff was transferred to Kern Valley State Prison in Delano, California, on April 4, 2018. (ECF No. 14 at 4.) Plaintiff was transferred to California Correctional Institution in Tehachapi, California, on October 24, 2018. (ECF No. 14 at 5.)

## III. Motions for Injunctive Relief

On May 28, 2019, plaintiff filed a motion for preliminary injunctive relief. On June 3, 2019, plaintiff filed a second motion for preliminary injunctive relief. Plaintiff claims he is a victim of a pattern of retaliation because he continuously refuses to accept a cellmate due to his PTSD issues, including retaliatory transfers, and because he has filed various administrative appeals and civil rights actions against correctional staff throughout the years. He argues his case is "very similar" to Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995) (reaffirming that an allegation of retaliatory prison transfer and double-cell status sufficiently states a claim of retaliation).

////

A. Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20 (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. Id. at 22 (citation omitted).

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. City of L.A. v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Further, requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ("PLRA"), which requires that the court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

Finally, the pendency of this action does not give the court jurisdiction over prison officials in general. Summers v. Earth Island Inst., 555 U.S. 488, 491-93 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491-93; Mayfield, 599 F.3d at 969.

B. Discussion

Initially, the undersigned finds that plaintiff's motions are premature. The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim

upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff states that the court denied both his original and amended complaints. (ECF No. 14 at 3.) Plaintiff is mistaken. The order to which plaintiff refers determined only whether or not plaintiff had demonstrated he faced a serious risk of imminent physical injury at the time he filed this action. The undersigned has not yet screened plaintiff's pleading because plaintiff has not yet been granted leave to proceed in forma pauperis or paid the court's filing fee. Once the motion for reconsideration is resolved and one of those two actions occur, the court will screen plaintiff's pleading.[4]

Because plaintiff's pleading has not yet been screened, the court cannot find that plaintiff has shown a likelihood of success on the merits because there is no finding that plaintiff stated a cognizable civil rights claim against a particular defendant. Moreover, no defendant has been ordered served, and no defendant has appeared. Therefore, although the court takes plaintiff's assertions regarding retaliation as potentially serious, the court lacks personal jurisdiction over any defendants named herein.

Further, plaintiff has been transferred since he filed this action, and is now housed at CCI in Tehachapi. Thus, any claim for injunctive relief against defendants at CSP-SAC, where he was previously housed, are now moot, as those defendants are no longer involved in determining where plaintiff is housed, or whether he should be single-celled. See Holt v. Stockman, 2012 WL 259938, *6 (E.D. Cal. Jan. 25, 2012) (a prisoner's claim for injunctive relief is rendered moot when he is transferred from the institution whose employees he seeks to enjoin); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Plaintiff also includes allegations concerning incidents at Kern Valley State Prison, as well as incidents at CCI. As stated, all of the defendants named herein are employed at CSP-SAC, therefore, the court has no jurisdiction over individuals at CCI where plaintiff is presently

////

---

[4] The court makes no determination at this time whether or not plaintiff's amended complaint states a civil rights claim.

6

housed. Indeed, allegations as to incidents at CCI, or Kern Valley for that matter, must be brought, if at all, in the Fresno Division of the Eastern District of California.

Furthermore, plaintiff's reliance on Pratt is unavailing for several reasons. First, Pratt was decided before restrictions of the PLRA were implemented in 1997. Second, the Ninth Circuit reversed the lower court's grant of injunctive relief, finding that "there is no probative evidence to establish a crucial link in the logical chain required to support the district court's finding of retaliation," mere timing alone was insufficient. Pratt, 65 F.3d at 807. Third, defendants had appeared in the action and had briefed the motion. Fourth, Pratt is factually distinguishable. For example, Pratt's injunction related to a very discrete time frame: late 1993 to early 1994. Here, plaintiff alleges a pattern of retaliation from 2010 through 2018 (and perhaps the present).

Plaintiff asks the court to consider his allegations raised in two prior cases: Womack v. Virga, 2:11-cv-1030 MCE EFB (E.D. Cal.), and Womack v. Sullivan, 2:14-cv-0085 WBS EFB (E.D. Cal.).[5] Plaintiff claims that these two cases clearly document his allegations that staff at CSP-SAC has retaliated against him by intentionally keeping plaintiff housed in violent level four institutions because plaintiff continuously refused to accept any cellmate. (ECF No. 13 at 3.)

Unfortunately, review of such cases does not offer support for plaintiff's requests for injunctive relief. Rather, in 2:11-cv-1030 MCE EFB, despite including some of the same allegations he raises herein, summary judgment was granted to defendants on the grounds that there was no evidence creating a genuine dispute as to whether defendants were deliberately indifferent to plaintiff's safety or medical needs by requiring that he accept a cellmate. Id. (ECF No. 83 at 12, 17.) Following detailed evaluation of the evidence submitted, the court noted that

> [t]he role of CDCR mental health staff members regarding housing and custody-related matters, is consultative, not mandatory. MSJ, Sullivan Decl. at ¶ 12; Worrell Decl. at ¶ 6; Stabbe Decl. at ¶ 7; Macomber Decl. at ¶ 8. Thus, while mental health staff members may, and often do, make recommendations regarding whether an inmate should be single-celled for some period of time, the ultimate authority for making inmate housing-related determinations rests exclusively with the Warden or the Warden's designee. *Id.*

---

[5] A court may take judicial notice of court records. See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

No. 2:11-cv-1030 MCE EFB (ECF No. 83 at 15.) The court ultimately found, in pertinent part:

> Though plaintiff has been diagnosed with various mental health-related conditions, there is no evidence that the psychiatric concerns that prompted his 30-day single-cell assignment in January 2010, remain present. Plaintiff has received extensive medical attention for his mental health needs, and none of his mental health clinicians have recommended further single-cell status. *See* Dckt. No. 76, Exs. B, C; MSJ, Sullivan Decl.; Macomber Decl. ¶ 9. Thus, there is no genuine dispute as to whether plaintiff requires single-cell housing for medical or mental health reasons. *See Anderson v. Zika*, No. C 11-04276 EJD PR, 2013 U.S. Dist. LEXIS 3639, at *13-14 (N.D. Cal. Jan. 8, 2013) (no Eighth Amendment claim based on having to share a cell absent a showing of how post traumatic stress disorder, or other mental illness, necessitated a single cell).
>
> . . . .
>
> While plaintiff's allegations regarding his experiences at CSP-Corcoran may have suggested a need for single cell status then, plaintiff fails to demonstrate how these "long past incidents" at "a different facilit[y]" entitle him to single cell status now. *See Lopez v. Hubbard*, No. Civ. S-09-1928 GEB GGH P, 2010 U.S. Dist. LEXIS 104503 (E.D. Cal. Sept. 29, 2010) (granting defendants' motion for summary judgment on plaintiff's claim that they denied him single-cell status, because "[o]ther than disagreeing with the decision, plaintiff . . . failed to present any evidence to justify single cell status," and merely "relie[d] on incidents in the 1980's and 1990's where he was assaulted").

No. 2:11-cv-1030 MCE EFB (ECF No. 83 at 17-18.) In addition, the court recommended denial of plaintiff's four motions for injunctive relief because plaintiff failed to show probable success on the merits, and there was no evidence demonstrating plaintiff would suffer irreparable harm in the absence of the requested relief. Id. (ECF No. 83 at 20.) The findings and recommendations were adopted in full over plaintiff's objections. Id. (ECF No. 89.) Plaintiff filed an appeal, which was dismissed due to his failure to file the opening brief. Id. (ECF No. 95.)

In case no. 2:14-cv-0085 WBS EFB, plaintiff named some of the same defendants he had in 2:11-cv-1030 MCE EFB, and sought a jury trial to determine if such defendants were deliberately indifferent to plaintiff's mental health by intentionally refusing to document plaintiff's PTSD he sustained while housed at Corcoran State Prison from 1989-92. No. 2:14-cv-0085 WBS EFB (ECF No. 1 at 3.) The court described plaintiff's allegations as follows:

> In the complaint, plaintiff alleges that his mental health care providers at Folsom State Prison refused to document his post-traumatic stress disorder, thereby preventing him from obtaining

8

> single-cell status. He claims he was so stressed out that he began grinding his teeth, until one of his molars broke into two pieces. In response to this incident, plaintiff was allegedly sent to the medical observation housing unit, where he was able to explain to the mental health providers his feelings about his post-traumatic stress disorder and his belief that his mental health providers were not documenting his concerns. Plaintiff's dental needs were met at the medical observation housing unit, which then transferred plaintiff to a state mental hospital. The doctors at the state mental hospital apparently agreed that plaintiff suffers from post-traumatic stress disorder and that he should be single-celled during his stay there. Plaintiff claims that once he was "properly diagnosed and receiving correct medication for his PTSD[,] he was sent back to Folsom State Prison." Plaintiff claims that when he returned to Folsom State Prison, he was placed in the Enhanced Outpatient Program, which is "a lock-up mental health single-cell program." Plaintiff claims that before he was diagnosed by the providers at the state mental hospital, he had been retaliated against for refusing cellmates. He claims that the defendants had refused to treat his post-traumatic stress disorder and "single-cell issues" and/or retaliated against him for seeking single-cell status. ECF No. 1 at 11.

No. 2:14-cv-0085 WBS EFB (ECF No. 5 at 2-3.) However, plaintiff's case did not go forward because he failed to pay the court's filing fee after the court found he had sustained three strikes under 28 U.S.C. § 1915(g), and failed to demonstrate he faced an imminent danger of serious physical injury at the time he filed the complaint. No. 2:14-cv-0085 WBS EFB (ECF No. 5, 7.)

Finally, the undersigned finds that plaintiff has failed to establish that he is likely to suffer irreparable harm in the absence of injunctive relief. Indeed, plaintiff fails to identify the specific relief he seeks. Instead, he claims he wants injunctive relief "pursuant to <u>Pratt v. Rowland</u>," and <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), compensatory damages, punitive damages, and asks the court to consider his amended complaint, motion for reconsideration, amended motion for reconsideration "as the documented foundation of his . . . motion for preliminary injunctive relief." (ECF No. 14 at 11; ECF No. 15 at 10.)

Conclusion

For all of the above reasons, the undersigned recommends that plaintiff's motions for injunctive relief (ECF No. 14, 15) be denied without prejudice.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motions for injunctive relief (ECF No. 14, 15) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 21, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/woma2708.pi