UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY JEROME WOMACK,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BAUGHMAN, Warden, et al.,<br><br>Defendants. | No. 2:17-cv-2708 TLN KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding pro se. On October 22, 2019, the Ninth Circuit vacated this court's April 18, 2019 order, and the district court's August 26, 2019 order, and remanded the case for further proceedings, citing see Williams v. King, 875 F.3d5 503-04 (9th Cir. 2017) ("all parties, including unserved defendants, must consent in order for jurisdiction to vest with the magistrate judge."). In light of such order, the September 25, 2019 findings and recommendations are also vacated.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and seeks leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

I. Has Plaintiff Suffered Three Strikes Under 28 U.S.C. § 1915(g)?

The Prison Litigation Reform Act of 1995 ("PLRA") permits any court of the United States to authorize the commencement and prosecution of any suit without prepayment of fees by

a person who submits an affidavit indicating that the person is unable to pay such fees. However,

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The plain language of the statute makes clear that a prisoner is precluded from bringing a civil action or an appeal in forma pauperis if the prisoner has brought three frivolous actions and/or appeals (or any combination thereof totaling three). Rodriguez v. Cook, 169 F.3d 1176, 1178 (9th Cir. 1999). "[Section] 1915(g) should be used to deny a prisoner's [in forma pauperis] status only when, after careful evaluation of the order dismissing an action, and other relevant information, the district court determines that the action was dismissed because it was frivolous, malicious or failed to state a claim." Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005). "[W]hen a district court disposes of an in forma pauperis complaint 'on the grounds that [the claim] is frivolous, malicious, or fails to state a claim upon which relief may be granted,' such a complaint is 'dismissed' for purposes of § 1915(g) even if the district court styles such dismissal as denial of the prisoner's application to file the action without prepayment of the full filing fee." O'Neal v. Price, 531 F.3d 1146, 1153 (9th Cir. 2008).

Court records confirm that another judge of this court has determined that plaintiff has brought, on at least three prior occasions, actions while incarcerated that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Womack v. Sullivan, 2:14-cv-0085 WBS EFB, 2014 WL 11774841, 2014 U.S. Dist. LEXIS 12457 (E.D. Cal.), adopted, 2014 WL 11774842 (E.D. Cal. Feb. 25, 2014); aff'd, 594 F. App'x 402 (9th Cir. 2015). In denying plaintiff in forma pauperis status, the district court relied on Womack v. Contra Costa County, No. C 04-3043 MMC, 2004 U.S. Dist. LEXIS 21975 (N.D. Cal. Oct. 13, 2004). In No. C 04-3043 MMC, the Northern District court declared plaintiff had suffered three strikes under § 1915(g) including based on the following cases: (1) Womack v. Superior Court, 99-2470 MMC (N.D. Cal. July 6, 1999) (Order of Dismissal); and (2) Womack v. Daley, 99-2469 MMC (N.D. Cal. July 6, 1999) (Order of Dismissal). In Womack v. Sullivan, the district court

found that those three cases "were dismissed on the grounds that such actions were frivolous, malicious, or failed to state a claim upon which relief may be granted." 2014 WL 11774841, at *1. The court also relied on Womack v. Donahoo, No. 2:12-cv-3110 WBS EFB, 2013 U.S. Dist. LEXIS 184681 (E.D. Cal. Sept. 13, 2013), which was dismissed for failure to state a claim. Sullivan, 2014 WL 11774841, at *1. On appeal, the Ninth Circuit Court of Appeal held that

> [t]he district court did not abuse its discretion by denying Womack leave to proceed in forma pauperis because it correctly determined that Womack had filed at least three actions that had been dismissed as frivolous or for failure to state a claim.

Womack v. Sullivan, 594 F. App'x 402 (9th Cir. 2015.)

Subsequently, another judge of this court found plaintiff had sustained three strikes under § 1915(g). Womack v. Swingle, No. 2:17-cv-0829 JAM AC P (E.D. Cal. Oct. 13, 2017) (collecting the same cases referenced in No. 2:14-cv-0085 WBS EFB), adopted Dec. 20, 2017. On appeal, the Ninth Circuit held that the district court properly determined plaintiff had filed three actions that qualified as strikes under § 1915(g). Womack v. Swingle, 749 F. App'x 581 (Mem) (9th Cir. 2019).[1]

Based on the foregoing, plaintiff has sustained three strikes under 28 U.S.C. § 1915(g).

II. Is Plaintiff Entitled to the Exception?

Plaintiff is precluded from proceeding in forma pauperis in this action unless plaintiff is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This "exception applies if the complaint makes a plausible allegation that the prisoner faced imminent danger of serious physical injury at the time of filing" the complaint. Andrews v. Cervantes, 493 F.3d 1047, 1053-55 (2007) (internal quotation marks omitted). "Imminent" refers both to "events that are already taking place . . . [and] those events [that are] 'ready to take place' or 'hanging threateningly over one's head.'" Id. at 1056 (citations omitted). To meet his burden under § 1915(g) to adequately allege "imminent danger of serious physical injury," plaintiff must provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct

---

[1] Plaintiff was also declared to be a three-strikes litigant in Womack v. Contra Costa County, No. C 04-3043 MMC (N.D. Cal.).

3

evidencing the likelihood of imminent serious physical injury." Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003).

Plaintiff's Operative Pleading

On February 23, 2018, plaintiff filed an amended complaint as a matter of course. Fed. R. Civ. P. 15(a). Plaintiff sets forth his experiences at prisons prior to his transfer to CSP-SAC in 2017. Plaintiff alleges that while participating in the EOP[2] program at California State Prison, Sacramento ("CSP-SAC"), plaintiff reported to defendant psychologist Marquez that plaintiff had filed numerous appeals complaining that staff at CSP-SAC, High Desert State Prison, and Corcoran State Prison have all attempted to get plaintiff hurt by inmates. Defendant Marquez refused to document plaintiff's reports, so plaintiff filed an appeal against Marquez for such refusal. Subsequently, Marquez came to plaintiff's cell with the appeal and told plaintiff that she and Correctional Officer Lee decided to remove plaintiff from the EOP program and return him to the mainline. Plaintiff objected that she and Lee were putting plaintiff's life in danger. Marquez returned the appeal to plaintiff and told him she was removing him from the program. Plaintiff filed another appeal in response. Plaintiff was subsequently sent to the mainline, and on October 30, 2017, while on the yard, plaintiff was attacked by four inmates. Plaintiff claims he was set up. Further, plaintiff elaborates that Marquez told plaintiff that she understands his safety concerns are connected to his being in the EOP program, and that his mental health problems are connected to his safety concerns. (ECF No. 9 at 11.) Plaintiff was rehoused on the mainline on January 3, 2017. (ECF No. 9 at 11-12.) Initially, plaintiff refused to leave his cell.

In 2017, plaintiff was assigned to work in the Building 2 dining hall, which plaintiff argues was to set plaintiff up for an inmate attack because plaintiff was the only inmate from Northern California; the other seven inmates assigned to work there were all "gangbangers from southern California," who "started disrespecting and threatening plaintiff." (ECF No. 9 at 13.)

---

[2] CDCR's Mental Health Services Delivery System Program Guide provides four levels of mental health care services: Correctional Clinical Case Management System ("CCCMS"); Enhanced Outpatient ("EOP"); Mental Health Crisis Bed ("MHCB") and inpatient hospital care. Coleman v. Brown, 2013 WL 6491529, at *1 (E.D. Cal. Dec. 10, 2013).

4

On several occasions, plaintiff informed the dining hall supervisor, Correctional Officer N. West,[3] that plaintiff was being set up to be attacked by gangbangers. On September 28, 2017, West referred plaintiff to mental health stating "[p]laintiff exhibits bizarre behavior, that inmate feels a sense of victimization." (ECF No. 9 at 14.) Plaintiff requested a job change, which was granted, but West withdrew the change application because West said plaintiff was the best worker. Following several occasions where plaintiff refused to report to work because of his safety concerns, and West insisted plaintiff return to work and threatened to write a disciplinary if he did not, plaintiff reported back to work at the dining hall. About 25 days later, plaintiff was attacked on C-yard by four gangbangers, apparently around October 30, 2017.[4]

Plaintiff contends that the inmate attack was the result of retaliation, an alleged pattern of continuous retaliation initially starting at CSP-SAC in the year 2010, and continuing through his housing at High Desert State Prison 2014, and at Corcoran State Prison in 2015. Plaintiff points out that he warned defendants at CSP-SAC that if he was rehoused on the Level 4 mainline he would be attacked. (ECF No. 9 at 15.) He argues that his safety concerns about correctional officers "continuous actions of setting plaintiff up to be attacked by inmates" still has not been addressed, and he "is still in imminent danger until correctional staff and mental health staff honestly address this retaliation issue." (ECF No. 9 at 15.)

This action was filed on December 28, 2017. Plaintiff's amended complaint fails to specifically identify the imminent danger he faced at the time he filed this action. Initially he contended that just being housed on the mainline posed a safety risk, but plaintiff was transferred to the mainline on January 3, 2017, and was safely housed there until on or about October 30, 2017. Importantly, plaintiff now seems to assign the risk of danger to his working in the dining hall, yet he does not connect such assignment to any of the named defendants, and he fails to explain whether he was still working at the dining hall following the October 30, 2017 attack. He provides no additional facts demonstrating he remains in danger following the attack. Despite

---

[3] West is not named as a defendant.

[4] Plaintiff was seen by Sandra Davis, a mental health social worker, on October 5, 2017. (ECF No. 9 at 14.) Plaintiff signed the original complaint on November 7, 2017. (ECF No. 1 at 6.)

5

1 plaintiff's conclusory effort to assert a retaliatory connection among events at three different
2 prisons from 2010 to the present, he fails to allege facts demonstrating a pattern of misconduct
3 evidencing the likelihood of imminent serious physical injury existed at the time he filed this
4 action. Plaintiff's retaliation claims are directed at asserted wrongs too attenuated from the
5 alleged danger of working in the dining hall. Plaintiff fails to explain why he is in imminent
6 danger, from whom, and to support such allegations with facts that would cause this court to
7 believe plaintiff was actually in imminent danger when he filed the original complaint, or when
8 he filed his amended complaint. Plaintiff's speculation that he was in danger is insufficient.
9 Because plaintiff has not alleged facts sufficient to draw an inference that he was under imminent
10 danger of physical harm at the time he commenced this lawsuit, or at the time he filed his
11 amended complaint, plaintiff must submit the appropriate filing fee in order to proceed with this
12 action.

Plaintiff's Subsequent Filings

In his motion for reconsideration, and supplement thereto, plaintiff relies on his two prior cases as evidence of his claim that he has demonstrated a pattern of retaliation. (ECF Nos. 12, 13.) However, in Womack v. Virga, Case No. 2:11-cv-1030 MCE EFB (E.D. Cal.), the district court adopted the magistrate judge's finding that plaintiff's "indefinite confinement" in administrative segregation was self-inflicted, stating:

> Notwithstanding plaintiff's purported fears, there is no evidence that sharing a cell will expose him to a substantial risk of serious harm. See Evans v. Beck, No. 1:12-cv-0284 AWI MJS PC, 2012 U.S. Dist. LEXIS 143982, at * 9-10 (E.D. Cal. Oct. 3, 2012) (allegations that defendants ordered plaintiff to double-cell despite plaintiff's documented single status at prior facility because of plaintiff's violence against cellmates fail to suggest that plaintiff faced a substantial risk of serious harm, given that violence was from "years past" and "any threat was posed by Plaintiff, not against Plaintiff"). Because plaintiff fails to create a triable issue as to whether any defendant exposed him to a substantial risk of serious harm, defendants are entitled to summary judgment.

Id. (March 22, 2013 Findings and Recommendations) (ECF No. 83 at 19), adopted July 2, 2013 (ECF No. 89). In Womack v. Sullivan, Case No. 2:14-cv-0085 WBS EFB P (E.D. Cal.), the court found plaintiff failed to demonstrate he faced an imminent danger of serious physical injury at the

time he filed the complaint:

> In the complaint, plaintiff alleges that his mental health care providers at Folsom State Prison refused to document his post-traumatic stress disorder, thereby preventing him from obtaining single-cell status. He claims he was so stressed out that he began grinding his teeth, until one of his molars broke into two pieces. In response to this incident, plaintiff was allegedly sent to the medical observation housing unit, where he was able to explain to the mental health providers his feelings about his post-traumatic stress disorder and his belief that his mental health providers were not documenting his concerns. Plaintiff's dental needs were met at the medical observation housing unit, which then transferred plaintiff to a state mental hospital. The doctors at the state mental hospital apparently agreed that plaintiff suffers from post-traumatic stress disorder and that he should be single-celled during his stay there. Plaintiff claims that once he was "properly diagnosed and receiving correct medication for his PTSD[,] he was sent back to Folsom State Prison." Plaintiff claims that when he returned to Folsom State Prison, he was placed in the Enhanced Outpatient Program, which is "a lock-up mental health single-cell program." Plaintiff claims that before he was diagnosed by the providers at the state mental hospital, he had been retaliated against for refusing cellmates. He claims that the defendants had refused to treat his post-traumatic stress disorder and "single-cell issues" and/or retaliated against him for seeking single-cell status. ECF No. 1 at 11. Plaintiff, who claims to now be single-celled in the Enhanced Outpatient Program, has not demonstrated that he faced an imminent danger of serious physical injury at the time he filed the complaint. Thus, the imminent danger exception does not apply.

Id. (ECF No. 5 at 2-3). The findings and recommendations were adopted on February 25, 2014, and the decision of the district court was affirmed on appeal on February 27, 2015. Thus, the undersigned finds unavailing plaintiff's reliance on such cases as demonstrating a pattern of retaliation by defendants at CSP-SAC.

Moreover, plaintiff's request for reconsideration fails to identify a plausible connection between the October 2017 attack and plaintiff's claimed pattern of continuous retaliation initially starting at CSP-SAC in the year 2010, and continuing through his housing at High Desert State Prison in 2014, and at Corcoran State Prison in 2015, or to defendant Marquez. Plaintiff further confirms that he refused placement back on the CSP-SAC B-yard on October 30, 2017, and was sent to administrative segregation. On November 8, 2017, plaintiff was seen by a CSP-SAC ad-seg committee, who allegedly refused to acknowledge plaintiff's safety concerns. (ECF No. 12 at 3.) But on November 9, 2017, plaintiff was interviewed by a psychologist who determined

plaintiff had legitimate concerns over being attacked on level four yards, and stated that "it does not appear to be a delusional disorder." (ECF No. 12 at 4.) Plaintiff was then transferred to Pelican Bay State Prison ("PBSP") level four mainline on November 10, 2017, due to "localized safety concerns at [CSP-SAC]." (12 at 4, 18.) Upon arrival at PBSP, plaintiff was placed on a sensitive needs yard due to plaintiff's safety concerns. Plaintiff's request demonstrates that plaintiff was not facing imminent danger at CSP-SAC because he was housed, at his request, in administrative segregation until his transfer to PBSP, and plaintiff was transferred shortly after the attack. Moreover, even though plaintiff was to be transferred to the mainline at PBSP, plaintiff was not placed on the mainline, but rather put on the sensitive needs yard. Thus, plaintiff was not in imminent danger during this period because plaintiff was not housed on a general population yard at CSP-SAC after the October 2017 attack.[5]

Further, plaintiff now claims that prison staff at California Correctional Institution ("CCI") are denying plaintiff any type of pain medication for his lower back pain, as well as other diagnostic treatment, which he alleges also constitutes imminent danger. (ECF No. 12 at 5.) But because plaintiff was transferred to CCI at some point after plaintiff's transfer to PBSP, any alleged failure to treat plaintiff at CCI cannot constitute imminent danger at the time plaintiff filed

---

[5] In addition, plaintiff's original complaint demonstrates that plaintiff was not actually housed at CSP-SAC at the time his original complaint was successfully presented to prison staff for mailing. (ECF No. 1 at 7.) Rather, because plaintiff failed to use the e-filing process at CSP-SAC, his pleading was initially returned to him for e-filing. In the meantime, plaintiff was transferred to PBSP, where e-filing was not yet implemented. At some point thereafter, it appears plaintiff presented the pleading to prison staff for mailing at PBSP, which explains why the original complaint was not entered on the court's docket until December 29, 2017, even though it was signed by plaintiff on November 7, 2017. Thus, because plaintiff was actually housed at PBSP at the time he successfully presented the original complaint for mailing, he was not facing imminent danger at CSP-SAC. Given the lengthy 52 day gap and no appended proof of service, it is not appropriate to apply the mailbox rule to consider plaintiff's original complaint filed on the signature date, November 7, 2017. See Vickers v. Adams, 2009 WL 2579090, at *1 n.4 (E.D. Cal. Aug. 19, 2009) (finding it "unreasonable" to "assume for purposes of the mailbox rule that the petition was mailed out on the date of this signature" when the petition was "actually filed" two months later); cf. Koch v. Ricketts, 68 F.3d 1191, 1193 n.3 (9th Cir.1995) (noting that in determining filing date under Fed. R. App. P. 4(c), governing filing of notices of appeal by prisoners, "[w]here the time lag between the alleged mailing and receipt by the district court is great, the district court may attribute the discrepancy to the court clerk, the postal service, the prison authorities, or the prisoner himself").

8

the instant action, based on an incident that took place at CSP-SAC in October of 2017. Also, because CCI is located in Tehachapi, California, in Kern County, any § 1983 claims arising from a lack of medical treatment at CCI must be brought in the Fresno Division of the Eastern District of California, against the appropriate individuals.

For all of the above reasons, the undersigned is not persuaded that his request for reconsideration or supplement (ECF Nos. 12, 13) demonstrate that plaintiff was at risk of imminent danger at the time he filed the instant action or his amended complaint.[6]

Because plaintiff has not alleged facts sufficient to draw an inference that he was under imminent danger of physical harm at the time he commenced this lawsuit, or at the time he filed his amended complaint, plaintiff must submit the appropriate filing fee in order to proceed with this action.

In accordance with the above, IT IS HEREBY ORDERED that the September 25, 2019 findings and recommendations (ECF No. 27) are vacated.

Further, IT IS RECOMMENDED that:

1. Plaintiff's request to proceed in forma pauperis (ECF Nos. 6, 30) be denied; and

2. Plaintiff be required to submit, within twenty-one days from any order adopting these findings and recommendations, the appropriate filing fee.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that

////

////

---

[6] On August 5, 2019, plaintiff filed yet another document in support of his request for an exception to the § 1915(g) three strikes bar. (ECF No. 20.) However, plaintiff was not granted leave to file additional briefing. Because the court has already considered plaintiff's amended complaint, and motion for reconsideration and amendment thereto, the undersigned declines to consider plaintiff's improper filing.

9

failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 25, 2020

_____<br>
KENDALL J. NEWMAN<br>
UNITED STATES MAGISTRATE JUDGE

/woma2708.1915.fr